JOURNAL ENTRY AND OPINION *Page 3 
{¶ 1} Defendants-appellants, Apollo Rivera, M.D. and University Emergency Specialists, Inc. (collectively "UES"), appeal the trial court's denial of their motion for a setoff of the settlement amount reached between plaintiff-appellee, Eugenia Karwowska, and co-defendant St. Michael Hospital ("the hospital"). Finding no merit to the appeal, we affirm.
 {¶ 2} On February 15, 2003, Dr. Rivera, an employee of UES, treated Karwowski's 41-year-old son, Jarslow Karwowski, when he arrived at the emergency room of the hospital. While being treated by Dr. Rivera for a suspected pulmonary embolism, Jarslow suffered a cardiac arrest. Jarslow was subsequently transferred to the Cleveland Clinic Foundation and had an echocardiogram done, which revealed that he had cardiac tamponade (a condition of pressure on the heart caused by excess fluid in the pericardium). Jarslow suffered a second cardiac arrest and died on February 23, 2003. Following his death, his mother filed the underlying wrongful death and medical malpractice case against several defendants, including Dr. Rivera, UES, and the hospital.
 {¶ 3} Although Dr. Rivera was an employee of UES, the hospital contracted with UES to provide physician staffing for its emergency department. Relying on this contractual relationship between UES and the hospital, Karwowski asserted a single claim against the hospital based on the doctrine of agency by estoppel, as recognized by the Ohio Supreme Court in Clark v. Southview Hosp. Family Health Ctr. (1994),68 Ohio St.3d 435. Under this doctrine, a hospital may be held liable for the negligence of independent medical practitioners practicing in the hospital when: "(1) it holds itself out to the public as a provider *Page 4 
of medical services; and (2) in the absence of notice of knowledge to the contrary, the patient looks to the hospital, as opposed to the individual practitioner, to provide competent medical care." Id. at syllabus.
 {¶ 4} Prior to trial, Karwowska settled her claim with the hospital for $250,000.
 {¶ 5} Karwowska's negligence claims against UES and Dr. Rivera proceeded to trial where a jury returned a verdict in her favor for $600,000. Following the jury verdict, UES moved for a setoff to reduce the jury's verdict by $250,000-the settlement amount reached between Karwowska and the hospital.
 {¶ 6} Following a hearing on the motion, the trial court denied UES's motion.
 {¶ 7} UES appeals, raising the following two assignments of error:
 {¶ 8} "[1] The trial [court] erred as a matter of law when it denied defendants [sic] motion for a set-off of the verdict based on the settlement of a co-defendant.
 {¶ 9} "[2] The trial [court] erred as a matter of law when it denied defendants [sic] motion for a set-off because plaintiff's counsel agreed to a set-off, and therefore, should be estopped from withdrawing this concession."
 Setoff {¶ 10} In their first assignment of error, UES argues that the trial court erred in denying their motion for a setoff because the tortious conduct of Dr. Rivera automatically imputed liability onto the hospital. UES argues that the jury's verdict against Dr. Rivera "automatically rendered" the hospital "liable in tort" requiring the trial court to grant their *Page 5 
motion for a setoff. They further contend that denying the setoff unlawfully allows a double recovery. We disagree.
 {¶ 11} Former R.C. 2307.32(F)[1] governs UES's claim for a setoff and provides in relevant part:
 {¶ 12} "When a release or a covenant not to sue or not to enforce judgment is given in good faith to one or two or more persons liable in tort for the same injury or loss to person or property or the same wrongful death, the following apply: (1) The release or covenant does not discharge any of the other tortfeasors from liability for the injury, loss, or wrongful death unless its terms otherwise provide, but it reduces the claim against the other tortfeasors to the extent of any amount stipulated by the release or the covenant, or in the amount of the consideration paid for it, whichever is greater[.]"
 {¶ 13} In Fidelholtz v. Peller, 81 Ohio St.3d 197, 1998-Ohio-462, the seminal case on the issue of setoff, the Ohio Supreme Court interpreted former R.C. 2307.32(F) and held that a nonsettling co-defendant is entitled to a setoff only if the settling co-defendant is "liable in tort." As the Court explained: *Page 6 
 {¶ 14} "Former R.C. 2307.32(F) [now R.C. 2307.33(F)] entitles a defendant to set off from a judgment funds received by a plaintiff pursuant to a settlement agreement with a co-defendant where there is a determination that the settling co-defendant is a person `liable in tort.' A person is `liable in tort' when he or she acted tortiously and thereby caused harm. The determination may be a jury finding, a judicial adjudication, stipulations of the parties, or the release language itself." Fidelhotlz at 203.
 {¶ 15} In reaching this holding, the court departed from its earlier decision in Ziegler v. Wendel Poultry Serv., Inc. (1993),67 Ohio St.3d 10, wherein it held that the trial court should have set off the amount paid to the plaintiff by a co-defendant ("Wendel") under a "high-low" settlement agreement. Despite the jury finding that Wendel was not liable for the plaintiffs injuries and that the co-defendant was solely liable, the court found that a setoff was still required. The court found pertinent that the agreement was executed in contemplation of the defendants being found jointly and severally liable. The court further emphasized that refusing a setoff would permit a plaintiff to obtain a double recovery, something that the statute was designed to prevent. Id. at 17-18.
 {¶ 16} In Fidelhotlz, however, the court shifted its primary focus from a concern that a plaintiff would obtain a double recovery to a concern that a nonsettling defendant, who is determined to be solely liable for the plaintiff s injuries, could unfairly reap the benefit of a co-defendant's settlement. Recognizing that a settlement is not tantamount to an admission of liability, the court reasoned that a setoff should be applied only after a determination that the settling co-defendant was "liable in tort," i.e., contributed to the plaintiffs harm. *Page 7 Fidelhotlz, 81 Ohio St.3d at 201-203. Otherwise, allowing an automatic setoff to a nonsettling tortfeasor "would subsidize tortious conduct." Id. at 202.
 {¶ 17} Here, the record contains no determination that the hospital was "liable in tort." Contrary to UES's contention, a jury verdict against Dr. Rivera does not automatically render the hospital "liable in tort." Indeed, the sole claim against the hospital was a claim for agency by estoppel, which, if successful, imposes vicarious liability on a hospital for its independent contractor's negligence without regard to any wrongdoing on the part of the hospital. Apart from the fact that Karwowska's agency by estoppel claim against the hospital was never adjudicated, there was never a determination that the hospital was "liable in tort."[2]
 {¶ 18} As recognized in Fidelhotlz, before a trial court can apply a setoff, there must be a determination through a jury finding, a judicial adjudication, stipulations of the parties, or the release language itself that the settling defendant was liable in tort. A nonsettling party's failure to comply with Fidelhotlz will defeat the party's claim for setoff. Nolan v. Conseco Health Ins. Co., 7th Dist. Nos. 07JE30 and 07JE31, 2008-Ohio-3332, at ¶ 136; Fultz v. Ring, 5th Dist. No. 2001 AP-05-0046, 2002-Ohio-781. Because the record contains no such determination, we find that the trial court properly denied UES's motion for a setoff[3] *Page 8 
 {¶ 19} In the alternative, UES argues that the trial court should have granted their motion for a setoff because they relied on Karwowska's counsel's representation, which they claim amounted to a stipulation. The record reveals that, prior to trial, Karwowska's counsel sent UES's counsel a letter attempting to induce settlement. In the letter, Karwowska's counsel stated the following:
 {¶ 20} "* * This offer will remain open until Friday, July 28, 2006. If this matter is not resolved and proceeds to trial, and, as we reasonably anticipate, the verdict and judgment are in excess of the $1,000,000 that may now settle this case, your client, Dr. Rivera, will be held liable for the entire amount of such verdict and judgment (less the $250,000 paid by University Hospitals of Cleveland) including the amount in excess of $1,000,000."
 {¶ 21} UES refused the settlement demand of Dr. Rivera's policy limits of $1,000,000 and the matter proceeded to trial. Notably, UES never obtained a stipulation of any setoff or inquired about a setoff prior to trial.
 {¶ 22} UES claims that they relied on this statement, forgoing any attempt to establish at trial that the hospital was liable on aClark claim. We do not find, however, that the statement constitutes a stipulation or judicial admission that the hospital was "liable in tort." As recognized by the First Appellate District in Beneficial OhioInc. v. Primero, L.L.C., *Page 9 166 Ohio App.3d 462, 2006-Ohio-1566, ¶ 12, judicial admissions generally constitute either "a distinct statement of fact which is material and competent and which is contained in a pleading[,]" or "admissions of facts made by attorneys during the progress of a trial[,]" or "admissions of counsel in motions or other papers filed by them[.]" Here, we cannot say that a counsel's single statement in a letter, not filed with the court or responded to by opposing counsel, satisfies the definition of a judicial admission or a stipulation. And given the context of the statement, we do not find that it was reasonable for UES's counsel to rely on the statement to his purported detriment.
 {¶ 23} Lastly, even if UES successfully demonstrated that the hospital was liable on an agency by estoppel claim for Dr. Rivera's negligence, we decline to hold that liability under this claim alone satisfies theFidelhotlz "liable in tort" requirement.
 {¶ 24} Accordingly, UES's first and second assignments of error are overruled.
Judgment affirmed.
It is ordered that appellees recover from appellant costs herein taxed.
The court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate be sent to said court to carry this judgment into execution.
A certified copy of this entry shall constitute the mandate pursuant to
 Rule 27 of the Rules of Appellate Procedure. *Page 10 
JAMES J. SWEENEY, A.J., and MARY EILEEN KILBANE, J., CONCUR
[1] Although we recognize that the parties reference former R.C. 2307.33(F) as the controlling statute, which amended and renumbered R.C. 2307.32(F) by Am. Sub. H.B. 350, effective January 27, 1997, the Ohio Supreme Court found Am. Sub. H.B. 350 unconstitutional in toto inState ex rel. Ohio Academy of Trial Lawyers v. Sheward,86 Ohio St.3d 451, 1999-Ohio-123. Because a decision of the Ohio Supreme Court declaring a statute unconstitutional is generally given retrospective application, we will therefore refer to R.C. 2307.32(F) in its earlier form. We further note that although R.C. 2307.32(F) was subsequently repealed by S.B. 120, R.C. 2307.32(F) and Fidelholtz [discussed infra] still apply to causes of action that accrue before April 9, 2003. SeeKane v. O'Day, 9th Dist. No. 23225, 2007-Ohio-702.
[2] We do recognize, however, that Karwowska's counsel opined at the post-trial hearing that had the hospital remained in the case through trial, the Clark claim (agency by estoppel) against the hospital would have succeeded. And Karwowska stipulated to the hospital's liability on a Clark claim on appeal. But notably, neither Karwowska nor her counsel admit that the hospital was "liable in tort" or that it caused the decedent's injuries.
[3] Notably, although UES filed a motion for setoff and presented evidence at a hearing for setoff, this was untimely for purposes of obtaining a judicial adjudication. See Nolan, supra, at ¶ 135. As recognized by the Seventh District in Nolan, supra, "requesting judicial adjudication after the jury has been dismissed is not a proper means to seek judicial adjudication." Id. Instead, a party may seek a judicial adjudication through summary judgment, partial summary judgment, or a directed verdict. Id.; see, also, In re Miamisburg Train DerailmentLitigation (1999), 132 Ohio App.3d 571. *Page 1