[Cite as *Jontony v. Colegrove*, 2012-Ohio-5846.]

# Court of Appeals of Ohio

### EIGHTH APPELLATE DISTRICT
### COUNTY OF CUYAHOGA

---

## JOURNAL ENTRY AND OPINION
## No.   98295

---

# HENRY JONTONY, ET AL.

**PLAINTIFFS-APPELLEES/
CROSS-APPELLANTS**

vs.

# LEE J. COLEGROVE, ET AL.

**DEFENDANT**

# [APPEAL BY CITY OF STRONGSVILLE]

**DEFENDANT-APPELLANT/
CROSS-APPELLEE**

---

## JUDGMENT:
## AFFIRMED IN PART,
## REVERSED IN PART, AND REMANDED

---

Civil Appeal from the
Cuyahoga County Court of Common Pleas
Case No.   CV-677987

**BEFORE:**   Keough, J., Stewart, P.J., and Cooney, J.

**RELEASED AND JOURNALIZED:**   December 10, 2012

**ATTORNEYS FOR APPELLANT/CROSS-APPELLEE**

Christina J. Marshall
Brian Dodez
James M. Popson
Sutter, O'Connell & Farchione Co., LPA
3600 Erieview Tower
1301 East 9th Street
Cleveland, OH 44114

**ATTORNEYS FOR APPELLEES/CROSS-APPELLANTS**

Mark J. Obral
Thomas J. Silk
Alexander L. Pal
Obral, Silk & Associates
1370 Ontario Street
1520 Standard Building
Cleveland, OH 44113

KATHLEEN ANN KEOUGH, J.:

{¶1} Defendant-appellant/cross-appellee, city of Strongsville ("the City"), appeals various rulings made by the trial court during the course of litigation with plaintiffs-appellees/cross-appellants, Henry Jontony, Patricia Jontony, Dominic Jontony, and Kara Jontony (collectively the "Jontonys"). The Jontonys filed a cross-appeal challenging the trial court's decision denying prejudgment interest. For the reasons that follow, we affirm in part, reverse in part, and remand.

{¶2} This case arises from a traffic accident involving Henry Jontony and city of Strongsville police sergeant, Lee Colegrove. It is undisputed that Colegrove, while on duty, turned in front of Mr. Jontony's vehicle, causing Mr. Jontony's vehicle to strike Colegrove's SUV police cruiser. It is also undisputed that Colegrove was operating his police cruiser without the use of his police lights and sirens. As a result of the accident, it is alleged that Mr. Jontony suffered serious brain injury.

{¶3} On December 3, 2009, the Jontonys filed an action against Colegrove and the city of Strongsville alleging negligence. On January 7, 2009, the city of Strongsville and Colegrove jointly filed an answer generically denying various allegations in the complaint, and asserting several affirmative defenses. Specifically for Colegrove, the defense of immunity pursuant to R.C. Chapter 2744 was asserted, whereas the affirmative defense of immunity was not asserted on behalf of the City.

{¶4} On the same day that the joint answer was filed, Colegrove moved for

judgment on the pleadings, contending he was immune from liability pursuant to R.C. 2744.03(A)(6). The motion concluded that "* * * Defendant Colegrove is entitled to judgment as a matter of law and the lawsuit should proceed against remaining Defendant City of Strongsville." Thereafter, the Jontonys voluntarily dismissed Colegrove from the lawsuit and proceeded solely against the City.

{¶5} The record reflects that discovery was ongoing, primarily on the issue of damages. On May 22, 2009, the Jontonys deposed Colegrove who testified that at the time of the accident he was not responding to an emergency call. In June, counsel for the Jontonys and the City exchanged correspondences regarding the issue of immunity, where the City (1) admitted negligence, (2) assumed "100% responsibility for the accident," and (3) identified the only remaining issues in the case to be damages and setoffs.

{¶6} With the issue of proving liability removed from the case, the matter was scheduled for trial to commence on September 28, 2009. Less than seven weeks before trial, the City attempted to raise the affirmative defense of immunity, which the City initially agreed had no application to the case. On August 11, 2009, the City filed its instanter motion for leave to file summary judgment asserting that it is was entitled to judgment as a matter of law because the City is immune from liability under the "emergency call" doctrine. On August 31, the trial court in denying the City's instanter motion, stated "Defendant failed to raise immunity on behalf of defendant City of Strongsville as an affirmative defense in its answer and has thus waived the defense." Additionally, on August 31, the trial court rescheduled the trial to December 28, 2009,

and new counsel for the City entered an appearance on the record.

{¶7} Three months later on November 20, 2009, the City requested leave to file its amended answer to assert the affirmative defense of governmental immunity. The trial court allowed both sides ample opportunity to present its arguments for and against the motion to amend. In January 2010, the trial court denied the City's request for leave to file its answer, specifically finding:

> Defendant City of Strongsville's motion for leave to amend answer is denied. Pursuant to Civil Rule 15(A), amendments to pleadings shall be freely granted when justice so requires; however, leave is denied if there is a showing of bad faith, undue delay, or undue prejudice to the opposing party. *Hoover v. Sumlin* (1984), 12 Ohio St.3d 1. Defendant assured plaintiff that "the City of Strongsville does not intend to assert an immunity defense because Officer Colegrove was not on an 'emergency call' as that phrase has been defined by R.C. § 2744(B)(1) and the case law interpreting the same." This assurance was made on or about June 22, 2009. Allowing defendant to amend its answer would be prejudicial. All dates remain as previously set.

{¶8} The matter ultimately proceeded to a jury trial on the issue of damages, and the jury awarded a total judgment to the Jontonys in the amount of $1,106,608.87. After applying statutory set-offs and caps, the trial court entered a final judgment in favor of the Jontonys in the amount of $796,891.07; however, it denied the Jontonys' request for

prejudgment interest.

## I. Amended Answer

{¶9} In its first assignment of error, the City contends that the trial court abused its discretion in denying its motion for leave to amend its answer to assert the defense of immunity.

{¶10} Civ.R. 8(C) requires that in a responsive pleading, a party must "set forth affirmatively * * * any other matter constituting an avoidance or affirmative defense." Accordingly, the affirmative defense of political subdivision immunity is required to be asserted in a responsive pleading. *Spence v. Liberty Twp. Trustees*, 109 Ohio App.3d 357, 360, 672 N.E.2d 213 (4th Dist.1996). Although failure to adhere to this requirement exposes the party to forfeiture of the defense, "[i]n the real world * * * failure to plead an affirmative defense will rarely result in [forfeiture]" because of the protection of Civ.R. 15(A). *Hoover v. Sumlin*, 12 Ohio St.3d 1, 5, 465 N.E.2d 377 (1984), quoting *Bobbitt v. Victorian House, Inc.*, 532 F.Supp. 734, 736 (N.D.Ill. 1982)

{¶11} Civ.R. 15(A) allows for amendment of pleadings by leave of court or by written consent of the other party after a responsive pleading has been made. As the trial court noted, Civ.R. 15(A) expressly provides that "[l]eave of court shall be freely given when justice so requires."

{¶12} An appellate court applies an abuse of discretion standard of review to a trial court's decision to grant or deny a party leave to amend a pleading. *Wilmington Steel Prods. Inc. v. Cleveland Elec. Illum. Co.*, 60 Ohio St.3d 120, 122, 573 N.E.2d 622 (1991).

"This court's role is to determine whether the trial judge's decision was an abuse of discretion, not whether it was the same decision we might have made." *Id*. An abuse of discretion connotes more than an error of law or of judgment; it implies that the court's attitude is unreasonable, arbitrary, or unconscionable. *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219, 450 N.E.2d 1140 (1983), citing *State v. Adams*, 62 Ohio St.2d 151, 157, 404 N.E.2d 144 (1980).

{¶13} This court has previously acknowledged that the abuse of discretion standard is a very high standard and "'evidences not the exercise of will but perversity of will, not the exercise of judgment but defiance thereof * * *.'" *Aponte v. Aponte*, 8th Dist. Nos. 77394 and 78090, 2001 Ohio App. LEXIS 529 (Feb. 15, 2001), quoting *State v. Jenkins*, 15 Ohio St.3d 164, 222, 473 N.E.2d 264 (1984).

{¶14} Although the grant or denial of a leave to amend a pleading is within the sound discretion of the trial court, this discretion is not unfettered. "A motion for leave to amend should be granted absent a finding of bad faith, undue delay or undue prejudice to the opposing party." *Hoover* at 6.

{¶15} In this case, the trial court determined that allowing the City leave to amend its answer would be prejudicial to the Jontonys; thus, it denied the City leave. The trial court based its decision, in part, on the assertion contained in the June 22, 2009 letter that the City was not pursuing an immunity defense in this case.

> This letter will confirm that the City of Strongsville does not intend to assert an immunity defense because Officer Colegrove was not on an "emergency call" as that phrase has been defined by R.C. [Section] 2744.02(B)(1) and the case law interpreting the same.

Additionally, as Officer Colegrove did during this deposition, the City is admitting he was negligent. Additionally, I do not see any colorable basis for asserting comparative negligence or assumption of the risk and, therefore, will not do so. Since Officer Colegrove did not see your client, the City is assuming 100% responsibility for the accident.

As I see it, the only remaining issues are what damages were proximately cause by this accident and whether the City is entitled to setoff under R.C. [Section] 2744.05(B).

**{¶16}** According to the jointly filed answer where immunity was not asserted on behalf of the City and this letter from the City, the Jontonys relied on the City's admissions and concessions and only prepared for trial concerning damages. We find this reliance reasonable considering that the June 22, 2009 letter was in response to the Jontonys' counsel asking for a "stipulation" regarding liability. *See Reed v. Multi-Cty. Juvenile Sys.*, 7th Dist. No. 09 CO 27, 2010-Ohio-6602, ¶ 51 ("even in a jointly filed answer, if only one of the defendants is named regarding a particular defense, it is reasonable to assume that the unnamed defendant did not intend to raise the defense"); *O'Brien v. Olmsted Falls*, 8th Dist. Nos. 89966 and 90336, 2008-Ohio-2658, ¶ 13 (pursuant to Civ.R. 8(C), defendant required to set forth affirmative defenses that would effectively preclude liability, and failure to do so waives the defense, including immunity).

**{¶17}** The City maintains that the trial court abused its discretion in finding prejudice because (1) discovery was still ongoing and trial was three months away, (2) the defense was raised only eight months after the action commenced, and (3) the Jontonys would not be faced with any different obstacles that would have been present if the

immunity defense had been asserted in the City's original answer. The City cites *Hoover*, 12 Ohio St.3d 1, 465 N.E.2d 377 and *McGlone v. Spade*, 3d Dist. No. 3-01-26, 2002-Ohio-2179, in support of its arguments.

{¶18} In *Hoover*, the defendant moved for leave to amend its answer to assert the affirmative defense of notice more than two years after commencement of litigation and after a trial date had been set. The Ohio Supreme Court, in finding the trial court abused its discretion in denying leave, held that "where [an affirmative] defense is tendered timely and in good faith, and no reason is apparent or disclosed for denying leave, the denial of leave to file such an amended pleading or the subsequent striking of a defense from an amended pleading is an abuse of discretion." *Id.* at 5, citing *Peterson v. Teodosio*, 34 Ohio St.2d 161, 175, 297 N.E.2d 113 (1973). Additionally, the court noted that the plaintiffs were not prejudiced by the addition of the affirmative defense "as they faced no obstacles by the amendment which they would have faced had the original pleading raised the defense." *Id.* at 6.

{¶19} In *McGlone*, the Third District concluded that the trial court did not abuse its discretion in granting the defendant's motion to amend its answer to assert the affirmative defense of immunity. *Id.* at ¶ 56. The defendant did not discover that the defense of immunity existed until after the plaintiff was deposed and it was discovered that due to an allowable workers' compensation claim the plaintiff filed, the defendant had an immunity defense. *Id.* at ¶ 53. The defendant immediately moved the trial court for leave to amend her answer, explaining the rationale and basis for the amendment.

The court, citing *Hoover*, held that the plaintiff would not be faced with any additional obstacles in proving liability because the defendant always denied she acted negligently. The court also distinguished the Ohio Supreme Court's decision of *Turner v. Cent. Local School Dist.*, 85 Ohio St.3d 95, 1999-Ohio-207, 706 N.E.2d 1261, noting that there was not a complete lack of rationale for the defendant's failure to assert the defense earlier.

{¶20} We find both *Hoover* and *McGlone* distinguishable from the facts in this case. Unlike in *Hoover*, where the trial court failed to indicate any basis for denying the defendant leave to amend, the trial court in this case clearly stated that the Jontonys would be prejudiced due to the assurances the City made in its June 22, 2009 letter.

{¶21} Moreover, unlike in *McGlone*, where the applicability of the immunity defense was discovered in depositions, the affirmative defense of immunity was "an obvious defense" from the face of the complaint, yet the City failed to assert it on its own behalf. *See Turner* at 99 (defendant failed to give any rationale or explanation for its failure to assert obvious defense in answer).

{¶22} In both *Hoover* and *McGlone*, the courts identified that the plaintiffs would not be prejudiced by the addition of the affirmative defense as they faced no additional obstacle that would not have been present if the original pleading raised the defense. In *Hoover*, the affirmative defense to be added was the statute of limitations defense, which by its nature did not place any additional obstacle before the plaintiff — the issue is whether the cause of action was timely filed within the limitations period. In *McGlone*, where the immunity defense was allowed to be asserted through an amended answer, the

defendant denied any liability from the outset of the case, thus, liability needed to be proven by plaintiff at trial. Accordingly, whether the plaintiff had to prove liability at trial or in response to an immunity defense, the *McGlone* plaintiff was faced with no additional obstacle with the defendant amending her answer to assert immunity.

{¶23} In the case before this court, however, the City admitted its negligence and assumed 100% responsibility for the accident. Therefore, the Jontonys would be faced with the additional obstacle of proving that the City was not immune from liability if the City was allowed to amend its answer — an obstacle that was nonexistent for eight months into litigation. *See Hayden v. Ford Motor Co.*, 497 F.2d 1292 (6th Cir.1974) (where plaintiff takes action in reliance on defendant's failure to assert an affirmative defense, plaintiff is prejudiced if leave to amend the answer is subsequently granted to assert the affirmative defense).

{¶24} Additionally, unlike in *McGlone* and more akin to *Turner*, the City gave no logical rationale or explanation for its failure to assert the obvious defense. The City contended that the case law supporting an "emergency call" defense was not discovered until after the answer was filed. However, the newly discovered case law cited by the City, *Longley v. Thailing*, 8th Dist. No. 91661, 2009-Ohio-1252, did not establish a new rule of law applicable to the case. This case merely reiterated a longstanding line of cases concerning the "emergency call" doctrine. *See, e.g., Colbert v. Cleveland*, 99 Ohio St.3d 215, 2003-Ohio-3319, 790 N.E.2d 781. Moreover, these cases were in existence when the City sent its June 22, 2009 letter maintaining that it was not asserting immunity

because Colegrove "was not on an 'emergency call' as that phrase has been defined by R.C. [Section] 2744.02(B)(1) and the case law interpreting the same." Much like in *Turner*, no rationale or explanation for its failure to assert the obvious affirmative defense was given by the City.

{¶25} We also find that when the City first raised the issue of immunity in its instanter motion for summary judgment, the trial was not three months away as the City argues, rather it was scheduled to commence in less than seven weeks. And even though the trial was rescheduled, when the City finally requested leave to amend its answer, in November, trial was less than five weeks away.

{¶26} Finally, we note that in the Jontonys' trial brief, which was filed one week after the City requested leave to file its motion for summary judgment, the Jontonys identify a portion of their brief as "Stipulations," where it is stated that "Defendants have stipulated to negligence, waived immunity, and stipulate to liability." The record does not reflect that the City has ever challenged this statement with the trial court.

{¶27} The Jontonys argued they would be prejudiced if the City was allowed to amend its answer and presented the trial court with documentation evidencing the amount of money they expended in preparation for trial on damages — the only issue remaining to litigate. While the issue of whether the City would prevail on its immunity defense is not before this court, we note that the City's immunity from liability would negate the trial on damages. Accordingly, the time and resources spent for trial would be for naught. This scenario is precisely what this court envisioned when it stated in *Supportive*

*Solutions Training Academy v. Electronic Classroom of Tomorrow*, 8th Dist. Nos. 95022 and 95287, 2012-Ohio-1185, ¶ 17, that "a political subdivision should timely assert its immunity defense so that the other litigant does not devote its time and resources in litigating a lawsuit that could be barred by immunity." *See also Hubbell v. Xenia*, 115 Ohio St.3d 77, 2007-Ohio-4839, 873 N.E.2d 878, ¶ 26, quoting *Burger v. Cleveland Hts*., 87 Ohio St.3d 188, 199-200, 1999-Ohio-319, 718 N.E.2d 912 (1999) (Lundberg Stratton, J., dissenting) ("'As the General Assembly envisioned, the determination of immunity could be made prior to investing the time, effort, and expense of the courts, attorneys, parties, and witnesses * * *'").

{¶28} Accordingly, the trial court's decision finding that it would be prejudicial to the Jontonys is neither unreasonable nor arbitrary. Furthermore, after the trial court denied the City's instanter motion for leave to file summary judgment, the City hired an independent medical examiner and participated in mediation. Finally, the City's new trial counsel who entered an appearance in August, waited three months to request leave to amend its answer to assert immunity. These subsequent actions by the City in preparing for trial on damages and the delay in seeking to amend its answer further evidence that the Jontonys reasonably relied on the City's initial position that immunity was not an issue.

{¶29} The trial court did not find that the City acted in bad faith, but found that the City's failure to timely assert the immunity defense was prejudicial to the Jontonys. In light of the foregoing discussion and reasons, we cannot say that the trial court abused its

discretion in denying the City leave to amend its answer to assert the immunity defense. The City's first assignment of error is overruled.

## II. Nunc Pro Tunc

**{¶30}** The City argues in its second assignment of error that the trial court erred in granting plaintiff's motion for a nunc pro tunc entry to clarify a previous order by entry of March 28, 2012. We agree.

**{¶31}** This court reiterated the longstanding rule of the use of nunc pro tunc in *Scaglione v. Saridakis*, 8th Dist. No. 91490, 2009-Ohio-4702.

> A nunc pro tunc order may be issued by a trial court, as an exercise of its inherent power, to make its record speak the truth. It is used to record that which the trial court did, but which has not been recorded. It is an order issued now, which has the same legal force and effect as if it had been issued at an earlier time, when it ought to have been issued. Thus, the office of a nunc pro tunc order is limited to memorializing what the trial court actually did at an earlier point in time. It can be used to supply information which existed but was not recorded, to correct mathematical calculations, and to correct typographical or clerical errors.

> A nunc pro tunc order cannot be used to supply omitted action, or to indicate what the court might or should have decided, or what the trial court intended to decide. Its proper use is limited to what the trial court actually did decide. That, of course, may include the addition of matters omitted from the record by inadvertence or mistake of action taken. Therefore, a nunc pro tunc order is a vehicle used to correct an order previously issued which fails to reflect the trial court's true action. (Internal citations omitted).

*Id.* at ¶ 9, quoting *State v. Greulich*, 61 Ohio App.3d 22, 24-25, 572 N.E.2d 132 (9th

Dist.1988).

**{¶32}** Moreover, "the function of a nunc pro tunc entry is not to correct or modify an existing judgment but rather to make the record conform to what has already occurred." *Pepera v. Pepera*, 8th Dist. No. 51989, 1987 Ohio App. LEXIS 6807 (Mar. 26, 1987).

**{¶33}** The trial court initially denied the City's instanter motion for leave to file a motion for summary judgment because the motion was based on the assertion of political immunity, which was an affirmative defense not raised by the City in its answer. An affirmative defense raised for the first time on summary judgment is not proper. *Supportive Solutions*, 8th Dist. No. 95287, 2012-Ohio-1185, at ¶ 24, citing *Mossa v. W. Credit Union, Inc.*, 84 Ohio App.3d 177, 181, 616 N.E.2d 571 (10th Dist.1992).

**{¶34}** However, the trial court attempted to expand its rationale for denying the City's motion by way of nunc pro tunc. The trial court was not correcting a mistake, rather it was expanding on its decision, at the request of the Jontonys. Reviewing the Jontonys' motion for a nunc pro tunc entry to clarify a previous order, its stated purpose was to prevent the City from making a certain argument on appeal. The entry modifies the court's prior decision to reflect the additional information and rationale the Jontonys wished the trial court would have included when it initially ruled on the City's motion. This is not the proper purpose of a nunc pro tunc.

**{¶35}** In this case, the trial court's true action was to deny the instanter motion for leave to file a motion for summary judgment, which is what it initially did. The nunc pro

tunc served no other purpose than to further explain an order of the court that needed no further explanation to reflect the truth of the record. Accordingly, the City's second assignment of error is sustained. On remand, the trial court is instructed to vacate the March 27, 2012 nunc pro tunc order.

### III. Directed Verdict/Immunity

{¶36} In its third and fourth assignments of error, the City contends that the trial court erred in denying the City's motion for directed verdict because it is immune from liability. However, as previously noted, the City failed to assert the defense of immunity in its responsive pleading, accordingly, the defense of immunity was waived and could not be used as an argument in favor of a directed verdict. *See, e.g., Spence*, 109 Ohio App. 357, 672 N.E.2d 213.

{¶37} Moreover, although the City did file a motion for judgment notwithstanding the verdict and a post-trial motion to amend its answer to conform to the evidence pursuant to Civ.R. 15(B), the City has failed to argue or assign any error on appeal regarding the trial court's denial of these motions. The City's third and fourth assignments of error are overruled.

### IV. Damages

{¶38} In its final assignment of error, the City argues that the trial court erred in partially denying its motion to enforce setoffs and non-economic damages cap pursuant to R.C. 2744.05.

{¶39} Following the jury verdict, the City moved the court to apply and enforce

setoffs and non-economic damages cap. Included in the motion, the City argued that it is entitled to a setoff of the full amount of the jury's award of $250,000 for "lost wages and loss of services" pursuant to R.C. 2744.05(B)(1). The trial court determined that Mr. Jontony's union pension benefits are not considered "benefits" under R.C. 2744.05; thus, not subject to setoff. The trial court also determined that it was left to speculate how much of the jury verdict was for lost wages and how much was for loss of services, but from the evidence, it apportioned that $48,859 was subject to setoff because the evidence was clear that this portion would necessarily be from lost wages.

{¶40} The City contends on appeal that the disability benefits received by Mr. Jontony through social security and his union pension plan exceed the $250,000 jury award and, therefore, the entire award should be set off pursuant to R.C. 2744.05(B). Within this argument the City raises three issues: (1) whether the benefits paid to Mr. Jontony through his union pension plan, classified as retirement disability benefits, are subject to setoff under R.C. 2744.05(B); (2) whether the Jontonys should benefit from the deficient jury interrogatories when the interrogatories used were submitted by the Jontonys; and (3) whether "loss of services" is subject to setoff under R.C. 2744.05(B).

{¶41} Because this court is asked to interpret R.C. 2744.05, we review this matter de novo.

## A. Union Pension Benefits

{¶42} The gravamen of the City's argument is that the benefits paid to Mr. Jontony pursuant to his Ohio Carpenters' Pension Union Fund are collateral source benefits to be

setoff under R.C. 2744.05.

{¶43} R.C. 2744.05(B) provides for setoff in an action against a political subdivision to recover damages for injury caused by an act in connection with a governmental function.

> (B)(1) If a claimant receives or is entitled to receive benefits for injuries or loss allegedly incurred from a policy or policies of insurance or any other source, the benefits shall be disclosed to the court, and the amount of the benefits shall be deducted from any award against a political subdivision recovered by that claimant.

Accordingly, the City is entitled to certain setoff amounts that Mr. Jontony received or would receive from collateral source benefits.

{¶44} "Benefits" under R.C. 2744.05(B), has been defined as "financial assistance received in time of sickness, disability, unemployment, etc. either from insurance or public programs such as social security." *Vogel v. Wells*, 57 Ohio St.3d 91, 98, 566 N.E.2d 154, quoting *Black's Law Dictionary* 158 (6th Ed.1990). The Ohio Supreme Court has also included Medicare and Medicaid as the "type of collateral source benefits contemplated by R.C. 2744.05(B)." *Galanos v. Cleveland*, 70 Ohio St.3d 220, 222, 638 N.E.2d 530 (1994), and *Buchman v. Bd. of Edn. of the Wayne Trace Local School Dist.*, 73 Ohio St.3d 260, 1995-Ohio-136, 652 N.E.2d 952, paragraph two of the syllabus. This classification has never been expanded to include monies received from self-funded pensions, and we decline to broaden this classification today.

{¶45} The Carpenters' Pension Fund is a self-funded pension plan, which Mr. Jontony contributed to for his retirement. According to the terms of the plan, Mr.

Jontony was permitted to take an early retirement due to his disability. Moreover, and per the terms of the plan, the amount of his monthly benefit was his fully accrued pension benefit under the Plan. The benefits he received were retirement benefits, which he was permitted to access early due to his disability. Accordingly, we find Mr. Jontony's union pension plan is not a "public program" as defined by the Ohio Supreme Court; thus, not subject to the setoff provisions of R.C. 2744.05(B).

B. Jury Interrogatories and "Loss of Services"

{¶46} The jury interrogatories submitted requested the jury to apportion its general verdict into six categories: (1) Past Medical Expenses, (2) Economic Compensatory Damages for Henry Jontony, (3) Non-economic Compensatory Damages for Henry Jontony, (4) Loss of Consortium for Patricia Jontony, (5) Loss of Consortium for Kara Jontony, and (6) Loss of Consortium for Dominic Jontony. The interrogatories separated "Economic Compensatory Damages" into two subsections: (A) Lost wages and loss of services and (B) Future medical care and treatment. Pertinent to the issue raised by the City, the jury awarded Mr. Jontony $250,000 for "lost wages and loss of services."

{¶47} The City contends that it is entitled to setoff the full amount of the jury's award for "lost wages and loss of services" because the amount of Social Security disability benefits Mr. Jontony received or is entitled to receive exceeds the jury award.

{¶48} In so far as the City is not entitled to any setoff of the union pension benefits Mr. Jontony received or is entitled to receive, the City is entitled to a setoff of the Social Security disability benefits Mr. Jontony received or is entitled to receive, but only to the

extent the benefits were actually included in the jury award.

> A political subdivision is entitled to an offset for collateral benefits only to the extent that such benefits are actually included in the jury's award, and is entitled to an offset for future collateral benefits only to the extent that they can be determined with a reasonable degree of certainty. Thus, it is the defendant's burden to prove the extent to which it is entitled to an offset under R.C. 2744.05(B).

*Buchman*, 73 Ohio St.3d 260, 270, 1995-Ohio-136, 652 N.E.2d 952.

**{¶49}** Determining whether a jury "actually included" in its award a benefit to be setoff can be difficult.

> Although R.C. 2744.05(B) does not require the submission of jury interrogatories to quantify the categories of damages that make up the general verdict * * * such interrogatories are the most efficient and effective method, if not the only method, by which to determine whether the collateral benefits to be deducted are within the damages actually found by the jury.

*Id.*, citing *Sorrell v. Thevenir*, 69 Ohio St.3d 415, 424, 1994-Ohio-38, 633 N.E.2d 504.

**{¶50}** In this case, the jury interrogatories fail to sufficiently separate lost wages and loss of services to determine what amount the jury apportioned for "lost wages" and "loss of services." The City asserts that this deficiency in the jury interrogatories was created by the Jontonys; thus, they should not benefit from the invited error. However, the burden is on the City "to prove the extent to which it is entitled to an offset under R.C. 2744.05." *Buchman* at paragraph five of the syllabus.

**{¶51}** While there is evidence in the record that the City requested that the jury interrogatory for "lost wages" be divided as "past lost wages" and "future lost wages," the City did not object to any inclusion of "loss of services" in the jury interrogatory. We

further note that the City did not assign as error the trial court's decision denying the use of the City's proposed jury interrogatories, the inclusion of "loss of services" within "lost wages," or the inclusion of "loss of services" under the "economic compensatory damages" category of the jury interrogatories. "To the extent that the failure to propose such interrogatories caused the trial court to speculate as to the amount of benefits to be deducted from the jury's verdict, the City failed in its burden." *See Buchman* at 270.

{¶52} In so far as the City maintains that "loss of services" are subject to setoff under R.C. 2744.05(B), this court has not been provided with, nor are we able to locate, any case law that supports the City's proposition that Social Security disability benefits are designed to compensate for loss of services. Accordingly, we find that the City is not entitled to setoff for "loss of services."

{¶53} However, we agree with the trial court that while the jury interrogatories do leave this court to speculate how much of the $250,000 was apportioned for "lost wages" and "loss of services," we can readily determine that some amount can be attributed to lost wages, to which the City would be entitled to a setoff.

{¶54} Based on the evidence at trial, the total amount the jury could have awarded to Mr. Jontony for "loss of services" is $201,141 — the value of Mr. Jontony's loss of services as testified by Dr. John Burke. Accordingly, the remaining $48,859 can only then be apportioned to Mr. Jontony's lost wages.

{¶55} Testimony was provided at trial that Mr. Jontony was completely disabled as a result of the accident. Because any jury award for lost wages would be based on Mr.

Jontony being determined to be disabled, and he has in fact received Social Security disability payments, the City would be entitled to a setoff of Social Security disability payments. The trial court did not err in finding that the City was entitled to a setoff of Social Security disability payments up to $48,859.

{¶56} Accordingly, the City's final assignment of error is overruled.

V. Cross appeal — Prejudgment Interest

{¶57} The Jontonys raise one assignment of error in their cross-appeal challenging the trial court's denial of prejudgment interest.

{¶58} R.C. 1343.03(C) governs the award of prejudgment interest and provides in pertinent part:

> (1) If, upon motion of any party to a civil action that is based on tortious conduct, that has not been settled by agreement of the parties, and in which the court has rendered a judgment, decree, or order for the payment of money, the court determines at a hearing held subsequent to the verdict or decision in the action that the party required to pay the money failed to make a good faith effort to settle the case and that the party to whom the money is to be paid did not fail to make a good faith effort to settle the case, interest on the judgment, decree, or order shall be computed as follows: * * *.

{¶59} The Ohio Supreme Court has set forth four factors a trial court should consider in determining whether a party has made a good faith effort to settle a case:

> (1) whether the party has fully cooperated in discovery proceedings, (2) whether the party has rationally evaluated his or her risk and potential liability, (3) whether the party has attempted to unnecessarily delay any of the proceedings, and (4) whether a good faith monetary offer was made, or responded to in good faith if made by the other party.

*Kalain v. Smith*, 25 Ohio St.3d 157, 495 N.E.2d 572, syllabus. The moving party bears

the burden of demonstrating that the other party failed to make a good faith effort to settle the case. *Moskovitz v. Mt. Sinai Med. Ctr.*, 69 Ohio St.3d 638, 1994-Ohio-324, 635 N.E.2d 331.

{¶60} The decision whether a party's settlement efforts indicate good faith is within the discretion of the trial court. This court will not disturb the trial court's findings absent an abuse of discretion. *Kalain* at 159.

{¶61} In this case, the trial court found that the City had a reasonable expectation that any jury award would likely be subject to setoffs and noneconomic damages caps pursuant to R.C. 2744.05. The trial court found these impositions would have likely factored into the City's calculus in evaluating its risks and potential liability. Accordingly, the trial court ultimately concluded that the City made a good faith monetary settlement offer and responded in good faith to settlement offers made by the Jontonys.

{¶62} The Jontonys contend that the trial court abused its discretion when it issued its decision without providing any analysis about whether the City made a good faith effort to settle the case considering the facts and evidence contained in the record. The Jontonys argue that the City failed to make a good faith effort to settle the case because (1) the record shows that the City's settlement authority was substantially higher than the City's settlement offers and (2) the jury verdict was substantially disparate to the amount of the City's settlement offer.

{¶63} The Jontonys ask this court to establish a rule of law that good faith is evidenced by comparing the offers made by one party to the settlement authority it

possesses — if an offer to settle is substantially disparate to actual settlement authority, then the offering party has not exercised good faith in settlement. While this may be a factor, it cannot be the sole basis for finding lack of good faith.

{¶64} The record reflects that the City's settlement authority was higher than the City's settlement offers. However, this factor alone does not establish that the City did not act in good faith. Although an insurance company may arm its attorneys with settlement authority, the attorneys evaluate the case, the risks, the potential liability, and any defenses, setoffs, or caps that may preclude or limit such risk or liability. Accordingly, the difference in settlement authority and offer should not, in and of itself, determine that a party did not act in good faith in settlement efforts. *See, e.g., Kalain* (no duty to disclose settlement authority when a reasonable, good faith belief exists of no liability).

{¶65} Moreover, a

> lack of good-faith effort to settle is not demonstrated simply by comparing the amount of a settlement offer to the verdict actually returned by a jury[,] although a substantial disparity between an offer and a verdict is one factor circumstantially demonstrating whether a party made a good-faith offer to settle or the adverse party failed to do so * * *.

*Andre v. Case Design, Inc*., 154 Ohio App.3d 323, 2003-Ohio-4960, 797 N.E.2d 132, ¶ 15 (1st Dist.).

{¶66} The City's highest offer to settle the case was $175,000, and the Jontonys' lowest offer was $2.9 million. The jury returned a total verdict of $1.1 million, however, after setoffs (which are at issue on appeal) and a non-economic damages cap, the amount

awarded to the Jontonys was reduced to $796,891.07. Accordingly, while the initial jury verdict was substantially higher than the City's offer to settle the case, we cannot fail to recognize that the initial jury verdict and final amount of judgment is also substantially lower than the Jontonys' final settlement offer.

**{¶67}** The record is abundantly clear that the trial court was actively involved in all aspects of this case including settlement negotiations, and was in the best position to evaluate whether good faith was exercised by both parties in settling this case. We find the trial court's decision denying prejudgment interest was based on competent, credible evidence; thus, not an abuse of discretion. The Jontonys' assignment of error raised in its cross-appeal is overruled.

**{¶68}** Judgment affirmed in part, reversed in part, and remanded for further proceedings consistent with this opinion.

It is ordered that the parties share equally the costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate be sent to said court to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.


KATHLEEN ANN KEOUGH, JUDGE

MELODY J. STEWART, P.J., CONCURS;

COLLEEN CONWAY COONEY, J., DISSENTS WITH SEPARATE OPINION.
COLLEEN CONWAY COONEY, J., DISSENTING:

{¶69} I respectfully dissent. I would reverse the trial court's judgment based on Strongsville's arguments in the first assignment of error relating to the court's denial of its motion to amend its answer.

{¶70} Civ.R. 15(A) provides:

A party may amend his pleading once as a matter of course at any time before a responsive pleading is served or, if the pleading is one to which no responsive pleading is permitted and the action has not been placed upon the trial calendar, he may so amend it at any time within twenty-eight days after it is served. Otherwise a party may amend his pleading only by leave of court or by written consent of the adverse party. Leave of court shall be freely given when justice so requires.

{¶71} In *Wilmington Steel Prods., Inc. v. Cleve. Elec. Illum. Co.*, 60 Ohio St.3d at 121-122, 573 N.E.2d 622 (1991), the Ohio Supreme Court explained:

The language of Civ. R. 15(A) favors a liberal policy when the trial judge is confronted with a motion to amend a pleading beyond the time limit when such amendments are automatically allowed. "*** Leave of court shall be freely given when justice so requires ***," the rule states. This court's role is too determine whether the trial judge's decision was an abuse of discretion, not whether it was the same decision we might have made. (Citation omitted.)

Furthermore, a motion for leave to amend should be granted to a party absent a finding of bad faith, undue delay or prejudice to the opposing party. *CommuniCare, Inc. v. Wood Cty. Bd. of Commrs.*, 161 Ohio App.3d 84, 2005-Ohio-2348, 829 N.E.2d 706, ¶ 17.

**{¶72}** In the instant case, the trial court gave a single reason for its denial of Strongsville's motion to amend — prejudice to Jontony. Strongsville argues that the trial court abused its discretion because there is no evidence of bad faith, undue delay, or prejudice. Jontony argues that the motion was properly denied, although not stated in the record, due to bad faith, undue delay, and prejudice, as well as defense counsel's alleged stipulation.

Stipulation

**{¶73}** First, the letter that Jontony points to as evidence of Strongsville's "stipulation," does not constitute a stipulation. In *Karwowska v. St. Michael Hosp.*, 8th Dist. No. 90041, 2008-Ohio-4235, ¶ 22, this court addressed a similar argument that a statement made in a letter constituted a stipulation.

> UES claims that they relied on this statement, forgoing any attempt to establish at trial that the hospital was liable on a Clark claim. We do not find, however, that the statement constitutes a stipulation or judicial admission that the hospital was "liable in tort." As recognized by the First Appellate District in *Beneficial Ohio Inc. v. Primero, L.L.C.*, 166 Ohio App.3d 462, 2006-Ohio-1566, 851 N.E.2d 510, ¶ 12, judicial admissions generally constitute either "a distinct statement of fact which is material and

competent and which is contained in a pleading[,]" or "admissions of facts made by attorneys during the progress of a trial[,]" or "admissions of counsel in motions or other papers filed by them[.]"   Here, we cannot say that a counsel's single statement in a letter, not filed with the court or responded to by opposing counsel, satisfies the definition of a judicial admission or a stipulation.   And given the context of the statement, we do not find that it was reasonable for UES's counsel to rely on the statement to his purported detriment.

{¶74} Similarly, in the instant case, the original attorney's statement in a letter, not filed with the court or termed a stipulation, does not satisfy the definition of a judicial admission or stipulation.   Therefore, it would not be reasonable to deny Strongsville's motion to amend based on an assumption that Jontony relied on this statement.

Waiver of Affirmative Defense

{¶75} Second, Strongsville did not waive the affirmative defense of immunity by not raising it in its answer.

{¶76} Per Civ.R. 12(H), Strongsville would have waived the defense, had it not moved to amend its answer pursuant to Civ.R. 15(A), which specifically provides the opportunity for a party to amend his pleading by leave of court or by written consent of the adverse party.   As stated above, a trial court shall freely give the party leave to amend when "justice so requires."   I would find justice required granting the motion to amend.

Failure to Appeal Denial of Summary Judgment

**{¶77}** Third, Strongsville did not waive the affirmative defense of immunity by failing to appeal the trial court's denial of its motion for leave to file summary judgment.

[A] summary judgment motion is not the proper format in which to raise an affirmative defense for the first time in a case. *Mossa v. W. Credit Union, Inc.*, 84 Ohio App.3d 177, 181, 616 N.E.2d 571 (10th Dist. 1992). Affirmative defenses cannot be asserted for the first time in a motion for summary judgment. *Carmen v. Link* (1997), 119 Ohio App.3d 244, 695 N.E.2d 28.

*Supportive Solutions Training Academy v. Electronic Classroom of Tomorrow*, 8th Dist. Nos. 95022 and 95287, 2012-Ohio-1185, ¶ 24 ("*ECOT*").[1]

**{¶78}** Jontony attempts to frame this issue in terms of case law regarding the denial of a motion for summary judgment, in which defendants raised immunity for the first time. However, in the instant case, Strongsville did not file a motion for summary judgment but only sought leave to file such a motion to assert the affirmative defense of immunity. The trial court denied the City leave to file, and summary judgment was not revisited. Thus, case law regarding motions for summary judgment are not applicable here because the City could not appeal a motion they were not permitted to file.

**{¶79}** This court recently dealt with a similar question of first impression in *ECOT*, where we stated:

---

[1]Appeal pending in the Ohio Supreme Court, Case No. 2012-0790.

In *Hubbell*, the Ohio Supreme Court held that "when a trial court denies a motion in which a political subdivision or its employee seeks immunity under R.C. Chapter 2744, that order denies the benefit of an alleged immunity and is therefore a final, appealable order pursuant to R.C. 2744.02(C)."   *Id.* at syllabus.

As this court recognized in the en banc decision in *Digiorgio v. City of Cleveland*, 8th Dist. No. 95945, [196 Ohio App.3d 575,] 2011-Ohio-5824, 964 N.E.2d 495, "although decided in the context of a motion for summary judgment, the *Hubbell* court made clear that its holding was not limited to only motions for summary judgment."   *Digiorgio* at ¶ 5.   The Ohio Supreme Court held,

> We conclude that the use of the words "benefit" and "alleged" illustrates that the scope of this provision is not limited to orders delineating a "final" denial of immunity.   R.C. 2744.02(C) defines as final a denial of the "benefit" of an "alleged" immunity, not merely a denial of immunity. Therefore, the plain language of R.C. 2744.02(C) does not require a final denial of immunity before the political subdivision has the right to an interlocutory appeal.
>
> * * *
>
> Accordingly, we hold that when a trial court denies a motion in which a political subdivision or its employee seeks immunity under R.C. Chapter 2744, that order denies the benefit of an alleged immunity and is therefore a final, appealable order pursuant to R.C. 2744.02(C).   *Hubbell* at ¶ 12, 27.

The *Hubbell* court explained the policy reasons for its broad interpretation of R.C. 2744.02(C) as follows:   "As the General Assembly envisioned, the determination of immunity [should] be made prior to investing the time, effort, and expense of the courts, attorneys, parties, and witnesses * * * ."   *Id.* at ¶ 26, quoting *Burger v. Cleveland Hts.*, 87 Ohio St.3d 188, 199-200, [1999-Ohio-319,] 718 N.E.2d 912 (1999).

However, the question before this court is whether this broad interpretation encompasses motions for leave to file amended responsive pleadings.   We find that it does not.

We find most significant the cases wherein *Hubbell* and its progeny are cited and relied on for authority involve dispositional-type motions, i.e., Civ.R. 12(B)(6) motions to dismiss, Civ.R. 12(C) motions for judgment on the pleadings, and Civ.R. 56 motions for summary judgment. *See, e.g., Digiorgio*; *Rucker v. Newburg Hts.*, 8th Dist. No. 89487, 2008-Ohio-910; *Summerville v. Forest Park*, 128 Ohio St.3d 221, 2010-Ohio-6280, 943 N.E.2d 522. To expand *Hubbell* to include orders such as denial of leave to file amended pleadings or motions would open the door for political subdivisions to challenge all adverse rulings potentially affecting its immunity defense with an immediate appeal. We do not believe *Hubbell* was intended to be read this broadly.

*Id*. at ¶ 12-16. The denial of a motion for leave to file summary judgment falls squarely in line with *ECOT*. I would argue that, consistent with *ECOT*, *Hubbell* cannot be read so broadly as to encompass the denial of a motion for leave to file summary judgment.

{¶80} Thus, the City has not waived the affirmative defense by failing to appeal the court's denial of its motion for leave to file summary judgment.

Untimeliness

{¶81} Fourth, Strongsville's motion was neither untimely nor was it made with undue delay.

{¶82} In *Turner v. Cent. Local School Dist.*, 85 Ohio St.3d 95, 1999-Ohio-207, 706 N.E.2d 1261, the Ohio Supreme Court ruled that the trial court had abused its discretion in allowing Central to amend its answer two years and ten months after litigation had commenced and after discovery was complete.

{¶83} In the instant case, Strongsville filed its motion to amend the answer 11 months after the complaint was filed, ten months after the joint answer was filed, and within three months of attempting to raise immunity in a motion for summary judgment.

The motion to amend was filed five weeks prior to the scheduled trial date of December 28, 2009.[2] At the time Strongsville filed the motion to amend, discovery was not yet complete. Strongsville's motion for enlargement of time for discovery had been granted, and discovery was ongoing.

{¶84} I would find the facts in the instant case are clearly distinguishable from those in *Turner*, and more similar to those in *Midstate Educators Credit Union, Inc. v. Werner*, 175 Ohio App.3d 288, 2008-Ohio-641, 886 N.E.2d 893 (10th Dist.), in which the appellate court found no abuse of discretion in granting Midstate's motion to amend its answer eight months after litigation began and after a failed attempt at arguing immunity on summary judgment, similar to the instant case. *Id.* at ¶ 19.

Unduly Prejudicial

{¶85} Fifth, Strongsville's motion was not unduly prejudicial.

{¶86} Jontony argues that allowing the City to amend its answer would have created undue prejudice due to Jontony's reliance on counsel's statements that immunity was not an issue. Jontony argues that they would have been prejudiced based on the thousands of dollars and hours spent on the case, under the assumption that immunity was not an issue.

{¶87} Jontony also argues that they would not have dismissed Officer Colegrove from the action had they known of immunity. This argument is without merit because he was dismissed voluntarily by Jontony only a month after the complaint was filed,

---

[2]Trial was ultimately held in June 2011.

giving the City a wide window in which to amend their answer and assert immunity for the City. And immunity was raised in the answer on the officer's behalf.

{¶88} While it is true that Jontony spent time and money on the case, these alone are insufficient reasons to deny the City's motion to amend early in litigation. Fed.R.Civ.P. 15 reflects two of the most important policies of the federal rules. *See* 6 Wright & Miller, *Federal Practice and Procedure*, Section 471, at 359 (1971). First, a liberal amendment policy provides the maximum opportunity for each claim *to be decided on the merits rather than on procedural deficiencies. Id.* (Emphasis added.) Second, the rule reflects the fact that pleadings are assigned the limited role of providing the parties to a lawsuit with notice of the nature of the pleader's claim or defense.

{¶89} Moreover, the merits of the affirmative defense of immunity based on the "emergency call" doctrine are not clearly established in the instant case. The officer's deposition is not dispositive regarding whether his actions would afford the City immunity. Therefore, the time and money spent by Jontony was not wasted, because the case might potentially require a trial despite allowing the City to amend its answer. An amendment to the answer would not necessarily have been dispositive of the City's liability.

{¶90} Having argued immunity for Officer Colegrove and other affirmative defenses for the City, Jontony cannot argue that it was prejudiced by the City's desire to amend its answer. Questions to Colegrove in his deposition regarding the call and whether it was an emergency call support the City's argument that Jontony suffered no

prejudice.

{¶91} It is clear from the record that mistakes were made by Strongsville's counsel in its initial handling of this case. However, these mistakes did not prejudice Jontony to such an extent that the court was within its discretion to deny the City's motion to amend its answer. I would find that Jontony was "not prejudiced by the addition of the [affirmative] defense as [he] faced no obstacles by the amendment which [he] would not have faced had the original pleading raised the defense." *Hoover v. Sumlin*, 12 Ohio St.3d 1, 5-6, 465 N.E.2d 377 (1984).

### Bad Faith

{¶92} Sixth, there is simply no evidence in the record to support a claim of bad faith. This is not a case in which the City was hiding facts or defenses from Jontony. Immunity, as well as numerous other affirmative defenses were raised in Strongsville's joint answer. The motion to amend the answer was filed soon after new counsel was retained. The failure to raise the affirmative defense in the original answer was clearly not made with malice or purpose to confuse or delay the proceedings.

{¶93} Furthermore, Strongsville's motion to amend contained its reason for the original counsel's failure to argue the affirmative defense, and explained that once the mistake was discovered, new counsel attempted to correct the matter. Failing to raise the issue in the original answer was clearly not tactical.

**{¶94}** Thus, due to the lack of delay, bad faith, or prejudice, I would reverse the trial court for its abuse of discretion in denying Strongsville's motion to amend its answer, as justice so requires.